IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

RICHARD E. BELL, JR. and
KAREN K. BELL, Individually and as Guardians
of the Property of BRIAN E. BELL
and BRANDEN R. BELL,

       Plaintiffs,

vs.

CIVIL ACTION NO. CV214-127

FREDERIC A. ROSEN AND
JOHNSON PUBLISHING COMPANY,
LLC

       Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME RICHARD E. BELL, JR. and KAREN K. BELL, Individually and as Guardians of the Property of BRIAN E. BELL, and BRANDEN R. BELL, Plaintiffs in the above-captioned case, and state their Complaint against FREDERIC A. ROSEN AND JOHNSON PUBLISHING COMPANY, LLC a/k/a JOHNSON PUBLISHING, INC., Defendants, as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs, RICHARD E. BELL, JR. (hereinafter "RICK BELL") AND KAREN

K. BELL, bring this suit individually and as the natural parents and Guardians of the Property of BRIAN E. BELL (hereinafter "BRIAN BELL"). They, as well as their son BRANDEN R. BELL (hereinafter "BRANDEN BELL"), are residents of Valdosta, Lowndes County, Georgia.

2.

Defendant, JOHNSON PUBLISHING COMPANY, LLC (hereinafter "JOHNSON"), is a Delaware limited liability company with its principal place of business in Cook County, Illinois. JOHNSON can be served through its registered agent for service of process, CT Corporation System, 208 So. LaSalle St, Suite 814, Chicago, IL 60604.

3.

Defendant, FREDERIC A. ROSEN (hereinafter "ROSEN"), is a resident of the state of New York and may be served at his resident address, 125 S. Manor Avenue, Kingston, NY 12301.

4.

This Court possesses subject matter jurisdiction over this claim pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.

This Court has personal jurisdiction over Defendants under the Georgia Long-Arm statute, O.C.G.A. 9-10-91(3). JOHNSON and ROSEN committed

tortious injuries in this state caused by acts or omissions outside this state, and JOHNSON derives substantial revenue from subscriptions and sales of Ebony Magazine and other publications in Georgia. ROSEN likewise benefits from JOHNSON's sales of Ebony in Georgia in that, on information and belief, JOHSON paid Rosen for the KJ Articles defined in paragraph 7 below. Rosen also benefitted as a true crime writer from the KJ Articles concerning alleged crimes in Georgia. Moreover, ROSEN and JOHNSON worked with a private investigator and other persons present in Georgia to gain background for the defamatory statements in the KJ articles which pertained to an alleged murder and other criminal activities in Georgia.

6.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that JOHNSON sells Ebony magazines and other publications in the Southern District of Georgia, including the Brunswick Division. ROSEN is subject to venue in this district since he also published the defamatory statements in this matter for profit in the Southern District Court of Georgia, and this Court may exercise pendent venue over him.

**FACTUAL ALLEGATIONS**

7.

Between August 12, 2013 and April 9, 2014, JOHNSON published a series of articles in Ebony Magazine, available in print and on the internet

site, www.ebony.com, about the death of Kendrick Johnson (hereinafter the "KJ Articles"), written by ROSEN, who has published a number of books in the "true crime" genre. The Ebony articles containing libelous statements in this case are attached hereto as part of Exhibit "A," which is described below.

8.

As early as "Who Killed Kendrick Johnson, Part IV" on September 4, 2013, The KJ Articles stated that Kendrick Johnson (hereinafter "KJ"), a sophomore at Lowndes County High School (hereinafter "LCHS"), was "murdered" by "blunt force trauma" and placed in a standing gym mat in the old gym at LCHS between third and fourth blocks, shortly after 1:00 PM, on January 10, 2013.

9.

In a November 19, 2013 article entitled "Tweets From Possible Suspects Raise Eyebrows" (hereinafter the "Tweets" article), ROSEN stated that a white sophomore high school football player fictitiously named Chris Martin, as well as his older brother fictitiously named Clark Martin (a LCHS senior), both sons of a Valdosta FBI agent, were "possible suspects" in KJ's murder. Tweets goes on to state that Chris Martin had the motive to murder KJ because of previous fights they had, resulting in a "prior animus" going back at least two years. The Tweets article, coupled with prior KJ articles, state that Chris and Clark Martin had the opportunity to commit the alleged

murder.

10.

At the time of the Tweets article in Ebony, many LCHS students, teachers and coaches were well aware that the references to Chris Martin and Clark Martin were in fact references to BRIAN BELL and BRANDEN BELL, sons of Valdosta FBI agent RICK BELL. BRIAN BELL was threatened with bodily harm and ostracized by many students after the Tweets article. Such threats from various sources have continued on social media, particularly Twitter, since that time, exacerbated by the national news coverage of KJ's death and alleged murder.

11.

On April 9, 2014, ROSEN, reinvented his version of KJ's death in a new Ebony article, "Are We Closer to Answers?" ("Answers"), and claimed that Chris Martin (i.e., BRIAN BELL), with the help of another unnamed classmate, murdered KJ between third and fourth block classes at LCHS on January 10, 2013, out of jealous rage after learning that KJ had had "sexual intercourse" with his "girlfriend."

12.

In early 2013, following an autopsy by the Georgia Bureau of Investigation (hereinafter the "GBI") and a thorough investigation by the Lowndes County Sheriff ("hereinafter "LCS"), KJ's death was ruled the result of accidental positional asphyxia after he became trapped in a standing gym

mat while trying to retrieve a pair of tennis shoes in the old gym at LCHS.

13.

The statements in the KJ Articles that KJ was "murdered" by "blunt force trauma", and the implication that his murder was covered up in a conspiracy involving RICK BELL and his family, LCHS personnel, the LCS and the GBI, are false and without any basis in fact.

14.

More importantly, however KJ died, the claim in the KJ Articles that BRIAN BELL, assisted by BRANDEN BELL or any other LCHS student, could have played any part in KJ's death in the LCHS gym is completely untrue. No effort was made by Defendants to verify the alibis of the BELL brothers. BRANDEN BELL was in route to a LCHS wrestling match in Macon, Georgia at the time of KJ's death. BRIAN was in class at LCHS, or walking to class, and never entered the LCHS old gym at all on January 10, 2013, as has been verified by witnesses and LCHS video surveillance camera footage.

15.

The Answers article was based upon a January 27, 2014 anonymous e-mail to LCS that had been thoroughly discredited by reports of LCS interviews with the sender and other persons mentioned in the e-mail that were released by LCS with the e-mail well before the Answers article. The author of the e-mail recanted her story in a Valdosta Daily Times article published on March 27, 2014. In fact, BRIAN BELL had no girlfriend at the

time of KJ's death, and the girlfriend he began dating later in 2013 had no personal relationship at all with KJ, much less a sexual relationship, at any time.

16.

The KJ articles are replete with false and misstated facts from fictitious LCS interviews allegedly proving motive and opportunity for the BELL brothers to have murdered KJ. The unredacted LCS investigative file, available under the Georgia Open Records Act, O.C.G.A. §50-18-71, et seq., was released to media sources and others prior to the Tweets article in November 2013. These factual misstatements are more particularly set forth in the demand letter of Plaintiffs' Counsel to Defendants, Exhibit "B" hereto, which is more particularly described below.

**DEMAND FOR RETRACTION AND RESPONSE**

17.

On April 18, 2014, counsel for the BELL Plaintiffs sent a letter to Defendants demanding a retraction of their libelous statements pursuant to O.C.G.A. §51-5-11. On May 19, 2014, Plaintiffs' counsel sent another letter to Defendants setting forth the specific retraction required by Plaintiffs. True and correct copies of these letters are attached hereto and made a part hereof as Exhibits "B" (without Exhibit "A" attachment) and "C," respectively. They were received by both Defendants.

18.

JOHNSON removed most of the KJ Articles from the Ebony website on May 5, 2014, but subsequently refused the written retraction demanded by the BELL Plaintiffs. ROSEN failed to respond at all to the initial BELL demand letter from Plaintiffs.

## **CAUSES OF ACTION**

### COUNT ONE

### LIBEL

19.

Plaintiffs repeat and re-allege each of the allegations in Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

20.

A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt or ridicule. O.C.G.A. § 51-5-1.

21.

False statements that one has committed criminal conduct amounting to a felony under Georgia law are libelous per se, that is, without the necessity of proving actual damages. Defendants have falsely accused BRIAN BELL of murder (as codified in O.C.G.A. § 16-5-1), BRANDEN BELL of being an accomplice or accessory to murder (as codified in O.C.G.A. § 16-2-

20), and RICK AND KAREN BELL of conspiracy to cover up murder (as codified in O.C.G.A. §16-10-50), all felonies under Georgia law, and have thus committed libel per se of all Plaintiffs.

22.

A libelous charge is actionable per se whether the words directly or indirectly, by intimation or innuendo, or indirectly or by inference, contain libel. It is the harmful effect of defamatory language as it is understood which renders it actionable per se, and not its directness or unequivocal nature. In this case, though the Defendants employed pseudonyms in the KJ Articles to describe the Plaintiffs, students, faculty and coaches at LCHS could and did easily discern that the referenced LCHS football player who had a fight with KJ on a school bus was BRIAN BELL, and that his older brother was BRANDEN BELL, and that both of them were sons of FBI agent RICK BELL and his wife KAREN BELL. The statements in the Answers article revising the theory of KJ's murder by BRIAN BELL with an unnamed accomplice, motivated by sexual jealousy, as well as the subsequent cover-up of the murder, constituted libel by innuendo of the Plaintiffs as much as the statements in the Tweets article, taken in context of all of the KJ Articles.

23.

The libelous statements were made and published in this case with actual malice, i.e., with actual knowledge by Defendants that they were false

or with reckless disregard of whether they were false. Such conduct amounts to negligence as well as reckless and wanton conduct.

24.

The libelous statements contained in the KJ Articles attached in Exhibit "A" hereto were published in the KJ articles in print wherever Ebony Magazine was published, including the Southern District of Georgia. They were also published nationally and worldwide via the internet, and have generated national media attention and the attention of the public worldwide. The first article containing sufficient information to identify the BELLS was the Tweets article on November 23, 2013.

25.

At all times pertinent to this Complaint in investigating, writing and discussing the libelous statements of Plaintiffs in the KJ articles, ROSEN was acting as the authorized agent of JOHNSON. JOHNSON is thus responsible for his libelous conduct under the doctrines of respondeat superior or agency, and is also responsible for its own conduct in publishing the KJ articles without any effort to verify the truth of the libelous allegations therein or with knowledge of the falsity of the allegations.

26.

All Plaintiffs have been permanently damaged and by Defendants' libel of their personal reputations, and RICK BELL has been injured in his professional reputation as an FBI agent. Apart from special damages of each

plaintiff that may be proven at trial, they are entitled to recover the sum of at least $3,000,000.00 in compensatory damages, or such additional sum as is determined appropriate by a fair and impartial jury in this case.

## COUNT TWO

## SLANDER

27.

Plaintiffs repeat and re-allege each of the allegations in Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28.

Slander or oral defamation consists, in pertinent part, of imputing to another a crime punishable by law... making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or other uttering any disparaging words producing special damages which flows naturally therefrom. O.C.G.A. § 51-5-4. The defamatory statements described herein made by Defendants have also been repeated and embellished orally by ROSEN in radio and TV shows, some broadcast on the internet, as early as October of 2013, and thus constitute slander as well as libel.

29.

A slander is published as soon as it is communicated to any person other than the party slandered. In this case, the slander was published on internet radio shows involving ROSEN between October 2013 and January

2014. On information and belief, other shows involving explanations of the Ebony articles have taken place on local television and radio stations, and in conversations ROSEN has had with bloggers via e-mail, twitter, Facebook and other social media that has been repeated on numerous occasions by other persons.

30.

A party who commits slander or libel may be held responsible for repetition of same by others if such repetition or republication by others is a natural and probable consequence of the original slander. In this case, Defendants knew that the false and defamatory statements they made about Plaintiff in a nationally-published magazine and via internet would be repeated by other persons. Such additional defamation is the responsibility of Defendants as the natural and probable consequence of their original statements.

31.

The libelous statements were made and published in this case with actual malice, i.e., with actual knowledge by Defendants that they were false or with reckless disregard of whether they were false. Such conduct amounts to negligence as well as reckless and wanton conduct.

32.

At all times pertinent to this Complaint in investigating, writing and discussing the libelous statements about Plaintiffs in the KJ articles,

ROSEN was acting as the authorized agent of JOHNSON. JOHNSON is thus responsible for his libelous conduct under the doctrines of respondeat superior or agency, and is also responsible for its own conduct in publishing the KJ articles without any effort to verify the truth of the libelous and allegations therein or with knowledge of the falsity of such statements.

33.

All Plaintiffs have been permanently damaged by Defendants' libel in both their personal reputations, and RICK BELL has been injured in his professional reputation as an FBI agent. Apart from special damages that may be proven at trial, they are entitled to recover the sum of at least $1,000,000.00 in compensatory damages, or such additional sum as is determined appropriate by the jury in this case.

## COUNT THREE

## PUNITIVE DAMAGES

34.

Plaintiffs repeat and re-allege each of the allegations in Paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.

Plaintiffs made demand for retractions by Defendants pursuant to O.C.G.A. § 51-5-11(a) through their attorneys by letters sent by certified mail as alleged in Paragraphs 17 and 18 herein, allowing at least seven (7)

days for responses. Defendants have refused or failed to make the demanded retractions. As a result, the jury is authorized to award Plaintiffs punitive damages if proven as required by law.

36.

Punitive damages may be awarded in tort actions in which it is proven by clear and convincing evidence that the defendant's action shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, and deter a defendant. O.C.G.A. § 51-12-5.1(b)(c).

37.

The conduct of Defendants in this case in publishing false statements of criminal conduct by Plaintiffs, with knowledge that such statements were untrue and extremely damaging to their reputations, or publishing these false statements with reckless disregard for their truthfulness, constituted willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences entitling Plaintiffs to recover an additional amount of punitive damages to be determined in the discretion of the jury to penalize or punish Defendants for such conduct and to deter such conduct in the future. Plaintiff seeks punitive damages of at least $1,000,000 and further avers that, by

clear and convincing evidence, Defendants acted with specific intent to harm Plaintiffs.

## COUNT FOUR

### EXPENSES OF LITIGATION

38.

Plaintiffs repeat and re-allege each of the allegations in Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.

Pursuant to O.C.G.A. § 13-6-11, Plaintiffs seek to recover, in the discretion of the jury, their expenses of litigation, including attorney's fees, on the basis that Defendants have acted in bad faith, been stubbornly litigious, or has caused Plaintiffs unnecessary trouble and expense.

40.

The amount of expenses of litigation at the time of trial shall be proven by appropriate documents and expert testimony as required by law.

### **JURY TRIAL DEMANDED**

41.

Plaintiffs respectfully demand a jury trial in this action.

WHEREFORE, Plaintiffs respectfully request that the Court grant them the following relief:

1. An award of general and compensatory damages on Count One or of the Complaint for libel in the amount of $3,000,000.00 or more; and

2. An award of general and compensatory damages on Count Two or of the Complaint for slander in the amount of $1,000,000.00 or more; and

3. An award of at least $1,000,000 in punitive damages on Count Three of the Complaint as determined in the discretion of the jury based upon the evidence produced at trial; and

4. An award of expenses of litigation on Count Four of the Complaint, in the discretion of the jury, in an amount to be based upon the documentary and expert testimony at trial regarding said expenses; and

5. Such other relief as is just and appropriate under the circumstances.

DATED this 27th day of AUGUST, 2014.

/s/M. Brice Ladson
**M. BRICE LADSON**
**Georgia Bar No. 431071**
**ATTORNEY FOR PLAINTIFFS**

**Ladson Law Firm, P.C.**
**10375 Ford Avenue, St. 3**
**P. O. Box 2819**
**Richmond Hill, Georgia 31324**
mbrice@ladsonlaw.com
**Tel: (912)459-1118**

/s/ Patrick T. O'Connor
**PATRICK T. O'CONNOR**
**Georgia Bar No. 548425**
**ATTORNEY FOR PLAINTIFFS**

/s/ Paul H. Threkeld
**PAUL H. THREKELD**
**Georgia Bar No. 710731**
**ATTORNEY FOR PLAINTIFFS**

**OLIVER MANER LLP**
**218 West State Street**
**Savannah, GA  31401**
**Tel:  912-236-3311**
**pto@olivermaner.com**
**pht@olivermaner.com**

-17-